IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

REX CHAPPELL,

    Plaintiff,                     No. 2:10-cv-2676 KJM AC P

    vs.

DUC, et al.,                      FINDINGS & RECOMMENDATIONS

    Defendants.

_____/

        Plaintiff is a state prisoner who proceeds pro se and in forma pauperis on his second amended complaint for relief filed pursuant to 42 U.S.C. § 1983.  Defendant has moved for summary judgment, and plaintiff has opposed.  See ECF Nos. 36, 44.

        Plaintiff has also filed a "Request for Subpoenas," which appears to be asking that the court return to him subpoenas which had been attached to a prior motion.  See ECF No. 52.

        For the reasons given below, the undersigned recommends that the "Request for Subpoenas" be denied, and that the motion for summary judgment be granted.

**BACKGROUND**

        All facts are undisputed unless noted.  Plaintiff is a California state prisoner who, on August 12, 2010, was housed in the administrative segregation unit ("SHU") at California

1

1  State Prison – Sacramento ("CSP-Sac").  ECF No. 19, Plaintiff's Second Amended Complaint

2  ("SAC"), at 5; Defendant's Statement of Undisputed Facts ("DUF"), ¶ 1; Declaration of B.

3  Strohmaier ("Strohmaier Decl."), ¶ 4.  Defendant Strohmaier is a correctional officer at CSP-

4  Sac.[1]  DUF ¶ 1; Strohmaier Decl. ¶ 1.

5        On August 12, 2010, plaintiff was taken from his cell to see Dr. Duc because

6  plaintiff's back was "locked" to one side, preventing him from standing up straight.  See SAC at

7  5.  Plaintiff alleges that he was "in debilitating pain, and could barely walk."  Id.; see also SAC

8  at 17-20 (radiology report and clinic notes from 2004 describing treatment of plaintiff's chronic

9  low back pain and degenerative bone and disc disease); ECF No. 44 at 39 ("Chronic Care

10 Followup Visit" Note dated September 16, 2010).  According to plaintiff, "when [his] back

11 lock's [sic] to one side he needs an injection to be able to relax the muscle and even be able to

12 move or walk . . . ."  See ECF No. 44 at 15.

13       Plaintiff also suffers from a "temporal lobe" seizure disorder.  Id.; see also Doc.

14 SAC at 22-25 (medical records and doctor notes from 1997, 2000, and 2005); ECF No. 44 at 39.

15       According to the plaintiff, he was initially placed in handcuffs by non-party

16 Officer Whitehead, who told plaintiff, "You don't have a waist chain chrono so you gotta cuff up

17 behind your back."  See SAC at 6.

18       Plaintiff stated.  I do have a chrono, the officer said it's not written
   on your cell door.  Not wanting to go through all that non-sense
19       (and plaintiff had to see the doctor so through all the pain he
   managed to handcuff behind his back).
20 SAC at 6.

21       The parties do not dispute that plaintiff did not present Officer Whitehead or

22 defendant Strohmaier with a valid waist chain chrono.  DUF ¶ 7; Doc. No. 44 at 4, 7, 13

23 (plaintiff alleges alternatively that he told defendant about his chrono, that defendant knew of the

24 ───────────────────

25    [1] By order filed January 6, 2012, defendants Duc, Guzman, Silva, Daly, Pereira, and
Virga were dismissed from this action.  ECF No. 25.  The only remaining defendant is defendant
26 Strohmaier.

chrono, that defendant did not ask for a chrono, and that defendant had a "duty/responsibility" to check with the doctor to see if plaintiff had a chrono, but did not). Plaintiff also alleges that he had a valid chrono but since he was at CSP-Sac because he was out to court, he did not have the chrono with him. Doc. No. 44 at 7. Defendant alleges that plaintiff's waist chain chrono had been discontinued on October 7, 2008. DUF ¶ 7.

The record reflects that on August 12, 2010, plaintiff did not have a valid waist chain chrono. Review of the record reveals that the comprehensive accommodation request dated October 7, 2008 was in effect on August 12, 2010. According to that document, on September 25, 2008 a physician at High Desert State Prison requested for plaintiff: (1) a brace; (2) a cane; (3) a mobility vest; and (4) waist chains. ECF No. 36-3, Comprehensive Accommodation Chrono, at 11. On October 7, 2008, the physician's request for a brace was granted, and the physician's requests for a cane, a mobility vest, and waist chains was denied. Id.

Plaintiff argues without record support that the October 7, 2008 chrono did not discontinue his waist chain accommodation, that he has always had a waist chain chrono, and alternatively that he did not receive the chrono dated October 7, 2008. See ECF No. 44 at 3, 13, 19. However, the record demonstrates that when plaintiff has been approved for waist chains, the applicable chrono specifically says so. For example, on March 25, 2011, after the incident at issue, plaintiff obtained a chrono for waist chains. See SAC at 15 (chrono dated March 25, 2011 approving item number 23, waist chains). See also SAC at 14 (chrono dated December 16, 2008 for ground floor cell and lower bunk only); ECF No. 44 at 22 (chrono dated June 28, 2008 identifies waist chains as a requested accommodation which request was not approved).

After being handcuffed by Officer Whitehead on August 12, 2010, plaintiff was then turned over to defendant Strohmaier at the dining hall. SAC at 6; DUF ¶ 5. Defendant "walked plaintiff past two cages (holding cages) 'that had a table and stool to sit on,' to a very small cage with barely enough room to stand in without shoulders touching both side's." SAC at

3

1  7. Plaintiff did not want to step into the small holding cage, because he thought that if he had a

2  seizure while in the small cage and handcuffed behind his back, he would break his neck. Id.

> Plaintiff asked defendant if he was going to take the handcuff's [sic] off when he's in there, and defendant stated no. Plaintiff then asked, then will you put me in one of the cages with a stool and table, so that I can sit and wait. Defendant stated you're alright in their [sic]. Plaintiff then told defendant Strohmaier that he has seizures and a waist chain chrono. Would you put me in those, because I'm gonna be in here more than an hour, "and if I have a seizure, I can break my neck handcuffed behind my back." Defendant stated no! Plaintiff stated well take the handcuffs off when I'm in there? Defendant stated no! And either go in there or take it back to your cell. He then stated, You're fine like that in there. Plaintiff stated, I'll be locked in the cage anyway, why can't you take the handcuff's off, I'll get in there if you take them off once I'm in there. Defendant pulled his riot stick (baton) and stated, "That's it, take it back to you cell."
>
> Plaintiff walked back to his cell. And when he and defendant reached plaintiff's cell plaintiff asked defendant," if he would come back to get plaintiff after the doctor's [sic] saw the other inmates already waiting?" Defendant stated, take it in your cell, I ain't gonna tell you again." Plaintiff went into his cell and filed a grievance against defendant for making a diagnosis (stating plaintiff will be alright in that cage handcuffed behind his back) when he has seizures, for his interference with medically prescribed treatment, for denying plaintiff the right to see the doctor, and deliberate indifference to plaintiff's continued good health and safety . . . .

18  SAC at 7-9. Plaintiff does not advise the court if he requested to return to the doctor on August

19  12, 2010.

20  According to defendant, plaintiff objected to waiting for the doctor in a small

21  holding cell with his hands behind his back; the medical clinic did not have a larger cell in which

22  plaintiff could have waited; defendant told plaintiff that he could wait for his doctor visit in the

23  holding cell with his hands cuffed behind his back, or he could return to his cell; and plaintiff

24  chose to have defendant escort plaintiff back to his cell. DUF ¶¶ 4, 5, 8-10; Strohmaier Decl. ¶¶

25  6, 8-10.

26  Defendant further asserts that in August 2010, as a general rule, an administrative

4

segregation inmate who was waiting for a doctor visit was required to remain in a holding cell while handcuffed behind his back, unless he showed a valid waist chain chrono to the escorting officer. DUF ¶ 2; Strohmaier Decl. ¶ 2. Defendant alleges that this practice helped ensure safety and security. DUF ¶ 3; Strohmaier Decl. ¶ 3. Plaintiff disputes this policy, based on his own experience and on his contemplated discovery: "Plaintiff will prove (via subpoena) of (O.P.) Operation Procedure that handcuff come's [sic] off <u>as a rule</u> anytime inmates are placed in a secure cage or cell. <u>You never leave an inmate handcuffed behind his back in a cage</u>, (unless he's suicidal), 'or asserting assaultive behavior.'" <u>See</u> ECF No. 44 at 3; <u>see also</u> ECF No. 44 at 6-7.

In his second amended complaint, plaintiff does not say when he next requested medical attention or went to the doctor. In his opposition to the motion for summary judgment, however, he advises that saw a doctor on September 16, 2010. <u>See</u> ECF No. 44 at 13, 16, 39-40. The report written by the doctor on that date reads that plaintiff's evaluation was "limited because the patient was locked in the holding cell. . . ." ECF No. 44 at 39. The report further reads:

> 3. Follow up chronic back pain. He stated that his back pain had a flare-up for the last couple of months since he arrived at this prison [CSP-Sac]. He stated that the mattress that he received was lumpy, and he attributed the pain as being caused by this mattress. Eventually he received a new mattress just a couple of days ago, but he is still complaining of a lot of pain in his back. I reviewed his medical records and it showed that he had chronic back pain in the past, and there was an MRI study in 2004 which reported multiple levels of disk degeneration with annular bulging and slight narrowing of the bilateral neural foramen in the L3, L4, and L5 levels. . . .
>
> ASSESSMENT/PLAN: . . . .
>
> 3. Chronic back pain but with new flare-up but since the patient received his new mattress, I expect that the patient's pain will get better. Regarding his previous MRI, I explained to the patient that there was nothing significant in the MRI, because of his age. I further explained that with his age most people will have some degeneration of the disks and some facet arthritis. As I am not excited about the MRI report, I would base on clinical findings and

> make sure that he does not have any nerve damage. If not, I will just give the patient Tylenol or ibuprofen for pain control but because of time limitations and the restriction, I cannot perform further tests. I will bring the patient back in 30 days for a low back pain checkup.

ECF No. 44 at 39-40. The report does not provide any indication that plaintiff received an injection or other treatment on September 16, 2010, or that his back was still "locked."

Plaintiff now alleges that defendant Strohmaier violated his Eighth Amendment rights as follows: (1) by interfering with his right to see a doctor; (2) by endangering plaintiff's life by trying to place him into a cell while handcuffed when defendant knew plaintiff suffered from seizures; and (3) by exhibiting deliberate indifference. See SAC at 9-12. Plaintiff alleges that defendant's actions have caused him atypical and significant hardship "as plaintiff's back has never been this messed up, or caused him this much pain. A year later plaintiff's back is still messed up." See id. at 10-11. Plaintiff seeks compensatory and punitive damages. Id. at 11-12.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment. ECF No. 36. Defendant argues that defendant did not subject plaintiff to any harm, because plaintiff chose to return to his cell rather than wait in the holding cell. See ECF No. 36-1 at 4. Defendant also argues that his conduct was not deliberately indifferent because when plaintiff refused to wait in the holding cell, defendant did not force plaintiff to stay. Id. at 5. He instead permitted plaintiff to return to his cell. Id. Defendant further argues that he is entitled to qualified immunity because "reasonable correctional officers could have believed that it was proper to address Chappell's refusal to remain in the holding cell in the same manner as [defendant]." See ECF No. 36-1 at 5. Defendant does not directly address plaintiff's claims that defendant delayed or interfered with plaintiff's treatment.

Plaintiff opposes the motion for summary judgment. He initially asks the court not to rule on the motion until he has had a chance to obtain information by subpoenas. See ECF No. 44 at 2. Plaintiff then argues that the state's regulations and Penal Code conflict with the

practice of handcuffing inmates cited by defendant in his declaration. See ECF No. 44 at 10-11. Plaintiff argues that defendant denied plaintiff the right to see the doctor, and subjected plaintiff to an additional month of pain and suffering while plaintiff waited to be rescheduled. Id. at 13, 16.

### Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990) (en banc).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen

1  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
2  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
3  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
4  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
5  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted); see also Carmen v. San
6  Francisco Unified School Dist., 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a
7  defendant acted from an unlawful motive, without evidence supporting that belief, is no more
8  than speculation or unfounded accusation . . . .")

Analysis

Plaintiff alleges that defendant Strohmaier endangered his life by trying to place him in a small holding cage while handcuffed.   Plaintiff also alleges that defendant Strohmaier offered a medical diagnosis when he told plaintiff he would be alright in the small holding cage. Plaintiff further alleges that defendant interfered with plaintiff's right to see a doctor, and showed deliberate indifference.

The undersigned construes plaintiff's allegations to present the following claims: (1) that defendant attempted to subject plaintiff to potentially life-threatening conditions, in violation of the Eighth Amendment, by directing him to enter the holding cage while handcuffed; and (2) that when plaintiff elected not to enter the holding cage, defendant caused a delay in plaintiff's medical treatment, in violation of the Eighth Amendment, by returning plaintiff to his cell.  Defendant's statement that plaintiff would be "alright" in the holding cage cannot fairly be characterized as a "medical diagnosis" so as to support an independent Eighth Amendment violation.  See Lum v. County of San Joaquin, 2012 WL 1027667 *11 (E.D. Cal. Mar. 23, 2012) ("Obviously the officers in this case are not physicians and have no training sufficient to diagnose."); see also Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (describing division of labor in prisons).  The more reasonable approach is to consider the statement as part of the totality of circumstances surrounding defendant's alleged attempt to endanger plaintiff.

9

*Endangerment*

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976); Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978), (citing Sims v. Adams, 537 F.2d 829 (5th Cir. 1976)). The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. Id. at 743-44.

The Eighth Amendment requires that inmates be furnished with the basic human needs, one of which is reasonable safety. Helling v. McKinney, 509 U.S. 25, 33 (1993) (inmate stated colorable Eighth Amendment claim when he alleged that current compelled exposure to environmental tobacco smoke posed an unreasonable risk to inmate's health). The amendment protects against future harms. Id. For example, inmates may state a colorable Eighth Amendment claim when they allege exposure to unsafe conditions that have not yet resulted in injury. Id. ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.")

However, actual exposure to the unsafe condition is required. Even a direct threat of harm, independent of actual subjection to danger, does not violate the Eighth Amendment. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (prison guards' alleged threats to beat inmate did not state a claim under the Eighth Amendment).

Summary judgment is appropriate in this case as to those claims which revolve around defendant Strohmaier's direction that plaintiff wait in the small holding cage. It is undisputed that plaintiff never entered the cage, and instead returned to his cell. Accordingly, he was never subjected to the allegedly life-threatening condition of being handcuffed in the cage. On these facts defendant did not endanger plaintiff, and did not violate the Eighth Amendment.[2] The circumstances described by plaintiff in his Second Amended Complaint constitute at most an attempted Eighth Amendment violation, premised upon plaintiff's speculation that he might have been injured had he been held inside the holding cage while handcuffed. Such potential for injury cannot support relief under § 1983, because the attempt never put plaintiff in harm's way.

Plaintiff appears to argue that he was forced to return to his cell as a result of the attempt, and that his medical treatment was delayed for one month as a consequence of the return. Because a delay in treatment is independently cognizable as an Eighth Amendment claim, the undersigned will analyze it separately.

---

[2] Because plaintiff was never exposed to the potential harm, the court need not consider defendant's state of mind in directing plaintiff to enter the cage -- specifically, whether defendant's remark that plaintiff would be alright in the holding cage reflected deliberate indifference to plaintiff's medical need. See Farmer v. Brennan, 511 U.S. 825, 844 (1994) ("Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.")

The undersigned also need not examine whether defendant would have violated state laws and regulations by maintaining plaintiff's restraints in the holding cage, as plaintiff claims. The undersigned notes, however, that none of the code sections or regulations cited by plaintiff appear to forbid handcuffing inmates while the inmate awaits a doctor.

11

*Delay in Medical Treatment*

The Ninth Circuit has held that, in order to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The Ninth Circuit has additionally recognized that a delay in treatment may state a claim under 42 U.S.C. § 1983; however, the delay must result in further harm to the inmate. See, e.g., Hallet v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989); Shapely v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) ("[M]ere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference. . . . [Prisoner] would have no claim for deliberate medical indifference unless the denial was harmful.")

When an inmate seeks money damages, as opposed to injunctive relief, the inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. See Leer, 844 F.2d at 633. Sweeping conclusory allegations will not suffice to prevent summary judgment. Id. at 634. The inmate must show: (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the Eighth Amendment; and (2) that this indifference was the actual and proximate cause of the deprivation of the inmate's right to be free from cruel and unusual punishment. Id.

As noted above, defendant has not specifically addressed the delayed treatment aspect of plaintiff's Eighth Amendment claim. However, the motion for summary judgment fairly includes this alternate, incipient theory as to defendant Strohmaier. See ECF No. 36-1 (arguing that defendant did not subject plaintiff to any unconstitutional condition or act with deliberate indifference in escorting him to the cage and thereafter to his cell). Accordingly, the court will review the record to determine if plaintiff, the non-moving party who will bear the burden of proof at trial, has failed to make a showing sufficient to establish the existence of an

element essential to its case. See Celotex, 477 U.S. at 322.

In order to carry his burden, plaintiff would have to present evidence tending to show: (1) that he had a serious medical need; and (2) that defendant's response to the need was deliberately indifferent:

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). First the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* at 1059 (citing *Estelle*, 429 U.S. at 104, 97 S.Ct. 285). Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. *Id.* at 1060. This second prong – defendant's response to the need was deliberately indifferent – is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.* Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment...." *Id.* at 1059 (quoting *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988)). Yet, an 'inadvertent [or negligent] failure to provide adequate medical care' alone does not state a claim under § 1983. *Id.* (citing *Estelle*, 429 U.S. at 105, 97 S.Ct. 285). A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. *Id.* at 1060. If the harm is an 'isolated exception' to the defendant's 'overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.' *Id.* (citations omitted).

See Jett, 439 F.3d at 1096.

Summary judgment is appropriate as to those claims which involve defendant's interference with plaintiff's medical visit and deliberate indifference to plaintiff's medical needs, because plaintiff has failed to carry his burden of proof. See Celotex, 422 U.S. at 322. Specifically, plaintiff has failed to establish that defendant Strohmaier caused plaintiff further harm by interfering with or delaying plaintiff's treatment. See Leer, 844 F.2d a 633-34; see also McGuckin v. Smith, 974 F.2d 1051, 1061 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (summary judgment appropriate where plaintiff failed to show that named individual defendants failed to perform their duties

properly).

*"Serious Medical Need"*

In order to show that he has a serious medical need, plaintiff must demonstrate that the failure to treat his back condition could result in further, significant injury or the wanton and unnecessary infliction of pain. See McGuckin, 974 F.2d at 1059. "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." Id. at 1059-60.

This plaintiff has done, as he has provided evidence that he suffers from degenerative back and disc problems, and that he was treated for pain as early as 2004. See, e.g., SAC at 17- 20, ECF No. 44 at 39-40. He has also stated that he suffered pain when he did not see the doctor on August 12th, and he described this pain as debilitating. See ECF No. 44 at 14. Defendant has not offered any evidence in rebuttal. Plaintiff has accordingly established the existence of chronic and substantial pain, indicating a serious need for treatment.

*"Deliberate Indifference"*

In order to show that defendant's response was deliberately indifferent, plaintiff must demonstrate both a purposeful act or failure to respond to his pain or possible medical need, and harm caused by the indifference. This plaintiff has not done. His evidence shows that he wanted to see the doctor for treatment on August 12th for his "locked" back, that he did not get to see the doctor on that day, that defendant returned plaintiff to his cell after plaintiff declined to wait in the holding cage selected by defendant, and that he saw a doctor on September 16, 2010, roughly a month after the incident at issue. The undersigned will assume for purposes of analysis that defendant Strohmaier was aware on August 12 of the severity of plaintiff's pain.

However, plaintiff does not explain why defendant Strohmaier was responsible

14

for the missed appointment, or – more importantly – for the one-month wait until plaintiff's September 16, 2010 appointment. See OSU Student Alliance v. Ray, 699 F.3d 1053, 1072, n.12 (9th Cir. 2012) ("To state a § 1983 claim against a government defendant, the plaintiff must allege that the defendant acted with sufficient culpability to breach a duty imposed by the relevant provision of federal law."); McGuckin, 974 F.2d at 1062 (individual doctors not responsible for delay when prison referral committee and prison administration responsible for scheduling surgical treatments and "charged with ensuring that [plaintiff's] surgery occurred promptly."); Leer, 844 F.2d at 633-34. Plaintiff's conclusory allegations that "defendant refused to allow plaintiff to see the doctor" (SAC at 12; ECF No. 44 at 5) are unsupported by the record, and insufficient to meet plaintiff's burden on summary judgment. See Carmen, 237 F.3d at 1028. Nothing in the complaint or in plaintiff's evidentiary showing suggests that Strohmaier had any authority over the scheduling of medical appointments.

In addition, plaintiff has not raised a triable issue of fact regarding harm from the delay. Plaintiff alleges in very general terms that his back "has never been this messed up," SAC at 10-11, but does not provide any facts linking the state of his back at the time the complaint was filed to the events of August 12, 2010 – let alone to defendant Strohmaier.

While the undersigned fully credits plaintiff's allegations of debilitating pain between August 12, 2010 and September 16, 2010, plaintiff has presented no reason to believe that his pain during this period was different from the chronic pain he has suffered before and since, or that his underlying condition was aggravated by the delay at issue. Cf. Jett, 439 F.3d at 1097 (inmate presented sufficient information to present a genuine issue of material fact where inmate had fractured his thumb yet did not see a hand specialist, as recommended by other treating doctors, for more than nineteen months after the initial injury, in which time the fracture had healed badly, resulting in continuing diminished use of the hand); Shapley, 766 F.2d at 407 (mere delay in surgery, without more, is insufficient to state a claim of deliberate medical indifference, where plaintiff alleged a five-year delay in knee surgery, causing permanent

damage to his knee).[3]  Quite to the contrary, the September 16, 2010 doctor's note attributed plaintiff's "flare up" to the mattress he had been sleeping on, not to the unavailability of any particular treatment the previous month.  ECF No. 44 at 39.  Accordingly, the asserted injury is too attenuated from the defendant's conduct to support relief.

Because plaintiff has failed to establish that the defendant was responsible for the delay in plaintiff's treatment, and that plaintiff suffered further harm as a result of the one-month delay, defendant is entitled to summary judgment.

Qualified Immunity

Because defendant is entitled to summary judgment for the reasons explained above, the court need not reach the question of qualified immunity.

**PLAINTIFF'S REQUEST FOR SUBPOENAS**

By order filed November 26, 2012, the court denied plaintiff's "Motion for Court's Assistance in Serving Attached Subpoenas."  See ECF Nos. 43, 51.  The court noted in that order that it had previously, on October 1, 2012, denied plaintiff's motion to reopen discovery.  See ECF No. 51 at 2.  The court found that plaintiff was again seeking to reopen discovery, and had failed to establish good cause to warrant modification of the court's prior scheduling order, under which discovery had closed on August 31, 2012.  Id.

Plaintiff now has filed a "Request for Subpoenas," and appeals to be asking that the court return to him subpoenas which were attached to his prior motion.  Plaintiff's request should be denied, as the subpoenas were filed as part of plaintiff's motion and are accordingly now part of the Clerk's record.  See, generally, L.R. 138.

---

[3] In McGuckin, supra, the Ninth Circuit found that the unnecessary continuation of plaintiff's chronic condition and accompanying pain caused "harm" sufficient to support a § 1983 claim.  However, in that case, plaintiff waited more than three and half years after an injury causing massive herniation of plaintiff's back and upper torso before receiving the surgery required to correct his condition.  974 F.2d at 1061.  In this case, there is no indication in the record that any significantly ameliorative solution is available to plaintiff and was withheld as the result of defendant's actions.

16

In addition, plaintiff argues that he needs the subpoenas to locate two inmates who witnessed the exchange between plaintiff and defendant on August 12, 2010.  See ECF No. 44 at 2.  However, plaintiff names four witnesses in his opposition.  See id. at 4.  And, as noted infra, this witness testimony would have little probative value, as plaintiff cannot hold defendant liable for an attempted § 1983 violation.

Discovery has closed, and the court has twice denied plaintiff's motion to reopen discovery.  Plaintiff's failure to seek discovery timely during the open period does not now constitute good cause to reopen.

Accordingly, IT IS HEREBY RECOMMENDED that

1. Plaintiff's "Request for Subpoenas" (ECF No. 52) be denied;

2. Defendant's motion for summary judgement (ECF No. 36) be granted; and

3. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-eight days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Courts order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 29, 2013.

\`

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE