1
2
3
4
5
6
7                   IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9
10
11   REX CHAPPELL,

12                   Plaintiff,                  No. 2:10-cv-2676 KJM AC P

13            vs.

14   DUC, et al.,                        FINDINGS & RECOMMENDATIONS

15                   Defendants.

16   _____/

17            Plaintiff is a state prisoner who proceeds pro se and in forma pauperis on his

18   second amended complaint for relief filed pursuant to 42 U.S.C. § 1983.  Defendant has moved

19   for summary judgment, and plaintiff has opposed.  See ECF Nos. 36, 44.

20            Plaintiff has also filed a "Request for Subpoenas," which appears to be asking that

21   the court return to him subpoenas which had been attached to a prior motion.  See ECF No. 52.

22            For the reasons given below, the undersigned recommends that the "Request for

23   Subpoenas" be denied, and that the motion for summary judgment be granted.

24                                   **BACKGROUND**

25            All facts are undisputed unless noted.  Plaintiff is a California state prisoner who,

26   on August 12, 2010, was housed in the administrative segregation unit ("SHU") at California

                                            1

1  State Prison – Sacramento ("CSP-Sac").  ECF No. 19, Plaintiff's Second Amended Complaint

2  ("SAC"), at 5; Defendant's Statement of Undisputed Facts ("DUF"), ¶ 1; Declaration of B.

3  Strohmaier ("Strohmaier Decl."), ¶ 4.  Defendant Strohmaier is a correctional officer at CSP-

4  Sac.[1]  DUF ¶ 1; Strohmaier Decl. ¶ 1.

5         On August 12, 2010, plaintiff was taken from his cell to see Dr. Duc because

6  plaintiff's back was "locked" to one side, preventing him from standing up straight.  See SAC at

7  5.  Plaintiff alleges that he was "in debilitating pain, and could barely walk."  Id.; see also SAC

8  at 17-20 (radiology report and clinic notes from 2004 describing treatment of plaintiff's chronic

9  low back pain and degenerative bone and disc disease); ECF No. 44 at 39 ("Chronic Care

10  Followup Visit" Note dated September 16, 2010).  According to plaintiff, "when [his] back

11  lock's [sic] to one side he needs an injection to be able to relax the muscle and even be able to

12  move or walk . . . ."  See ECF No. 44 at 15.

13        Plaintiff also suffers from a "temporal lobe" seizure disorder.  Id.; see also Doc.

14  SAC at 22-25 (medical records and doctor notes from 1997, 2000, and 2005); ECF No. 44 at 39.

15        According to the plaintiff, he was initially placed in handcuffs by non-party

16  Officer Whitehead, who told plaintiff, "You don't have a waist chain chrono so you gotta cuff up

17  behind your back."  See SAC at 6.

18                 Plaintiff stated.  I do have a chrono, the officer said it's not written
                   on your cell door.  Not wanting to go through all that non-sense
19                 (and plaintiff had to see the doctor so through all the pain he
                   managed to handcuff behind his back).
20  SAC at 6.

21        The parties do not dispute that plaintiff did not present Officer Whitehead or

22  defendant Strohmaier with a valid waist chain chrono.  DUF ¶ 7; Doc. No. 44 at 4, 7, 13

23  (plaintiff alleges alternatively that he told defendant about his chrono, that defendant knew of the

24  _____

25        [1]  By order filed January 6, 2012, defendants Duc, Guzman, Silva, Daly, Pereira, and
      Virga were dismissed from this action.  ECF No. 25.  The only remaining defendant is defendant
26      Strohmaier.

                                        2

1 chrono, that defendant did not ask for a chrono, and that defendant had a "duty/responsibility" to

2 check with the doctor to see if plaintiff had a chrono, but did not).  Plaintiff also alleges that he

3 had a valid chrono but since he was at CSP-Sac because he was out to court, he did not have the

4 chrono with him.  Doc. No. 44 at 7.  Defendant alleges that plaintiff's waist chain chrono had

5 been discontinued on October 7, 2008.  DUF ¶ 7.

6         The record reflects that on August 12, 2010, plaintiff did not have a valid waist

7 chain chrono.  Review of the record reveals that the comprehensive accommodation request

8 dated October 7, 2008 was in effect on August 12, 2010.  According to that document, on

9 September 25, 2008 a physician at High Desert State Prison requested for plaintiff: (1) a brace;

10 (2) a cane; (3) a mobility vest; and (4) waist chains.  ECF No. 36-3, Comprehensive

11 Accommodation Chrono, at 11.  On October 7, 2008, the physician's request for a brace was

12 granted, and the physician's requests for a cane, a mobility vest, and waist chains was denied.

13 Id.

14         Plaintiff argues without record support that the October 7, 2008 chrono did not

15 discontinue his waist chain accommodation, that he has always had a waist chain chrono, and

16 alternatively that he did not receive the chrono dated October 7, 2008.  See ECF No. 44 at 3, 13,

17 19.  However, the record demonstrates that when plaintiff has been approved for waist chains,

18 the applicable chrono specifically says so.  For example, on March 25, 2011, after the incident at

19 issue, plaintiff obtained a chrono for waist chains.  See SAC at 15 (chrono dated March 25, 2011

20 approving item number 23, waist chains).  See also SAC at 14 (chrono dated December 16, 2008

21 for ground floor cell and lower bunk only); ECF No. 44 at 22 (chrono dated June 28, 2008

22 identifies waist chains as a requested accommodation which request was not approved).

23         After being handcuffed by Officer Whitehead on August 12, 2010, plaintiff was

24 then turned over to defendant Strohmaier at the dining hall.  SAC at 6; DUF ¶ 5.  Defendant

25 "walked plaintiff past two cages (holding cages) 'that had a table and stool to sit on,' to a very

26 small cage with barely enough room to stand in without shoulders touching both side's."  SAC at

7. Plaintiff did not want to step into the small holding cage, because he thought that if he had a

seizure while in the small cage and handcuffed behind his back, he would break his neck.  Id.

> Plaintiff asked defendant if he was going to take the handcuff's
> [sic] off when he's in there, and defendant stated no.  Plaintiff then
> asked, then will you put me in one of the cages with a stool and
> table, so that I can sit and wait.  Defendant stated you're alright in
> their [sic].  Plaintiff then told defendant Strohmaier that he has
> seizures and a waist chain chrono.  Would you put me in those,
> because I'm gonna be in here more than an hour, "and if I have a
> seizure, I can break my neck handcuffed behind my back."
> Defendant stated no!  Plaintiff stated well take the handcuffs off
> when I'm in there? Defendant stated no! And either go in there or
> take it back to your cell.  He then stated, You're fine like that in
> there.  Plaintiff stated, I'll be locked in the cage anyway, why can't
> you take the handcuff's off, I'll get in there if you take them off
> once I'm in there. Defendant pulled his riot stick (baton) and
> stated, "That's it, take it back to you cell."

> Plaintiff walked back to his cell.  And when he and defendant
> reached plaintiff's cell plaintiff asked defendant," if he would
> come back to get plaintiff after the doctor's [sic] saw the other
> inmates already waiting?" Defendant stated, take it in your cell, I
> ain't gonna tell you again."  Plaintiff went into his cell and filed a
> grievance against defendant for making a diagnosis (stating
> plaintiff will be alright in that cage handcuffed behind his back)
> when he has seizures, for his interference with medically
> prescribed treatment, for denying plaintiff the right to see the
> doctor, and deliberate indifference to plaintiff's continued good
> health and safety . . . .

SAC at 7-9.  Plaintiff does not advise the court if he requested to return to the doctor on August

12, 2010.

According to defendant, plaintiff objected to waiting for the doctor in a small

holding cell with his hands behind his back; the medical clinic did not have a larger cell in which

plaintiff could have waited; defendant told plaintiff that he could wait for his doctor visit in the

holding cell with his hands cuffed behind his back, or he could return to his cell; and plaintiff

chose to have defendant escort plaintiff back to his cell.  DUF ¶¶ 4, 5, 8-10; Strohmaier Decl. ¶¶

6, 8-10.

Defendant further asserts that in August 2010, as a general rule, an administrative

4

1   segregation inmate who was waiting for a doctor visit was required to remain in a holding cell

2   while handcuffed behind his back, unless he showed a valid waist chain chrono to the escorting

3   officer.  DUF ¶ 2; Strohmaier Decl. ¶ 2.  Defendant alleges that this practice helped ensure safety

4   and security.  DUF ¶ 3; Strohmaier Decl. ¶ 3.  Plaintiff disputes this policy, based on his own

5   experience and on his contemplated discovery: "Plaintiff will prove (via subpoena) of (O.P.)

6   Operation Procedure that handcuff come's [sic] off <u>as a rule</u> anytime inmates are placed in a

7   secure cage or cell.  <u>You never leave an inmate handcuffed behind his back in a cage</u>, (unless

8   he's suicidal), 'or asserting assaultive behavior.'"  <u>See</u> ECF No. 44 at 3; <u>see also</u> ECF No. 44 at

9   6-7.

10          In his second amended complaint, plaintiff does not say when he next requested

11  medical attention or went to the doctor.  In his opposition to the motion for summary judgment,

12  however, he advises that saw a doctor on September 16, 2010.  <u>See</u> ECF No. 44 at 13, 16, 39-40.

13  The report written by the doctor on that date reads that plaintiff's evaluation was "limited

14  because the patient was locked in the holding cell. . . ."  ECF No. 44 at 39.  The report further

15  reads:

16          3.  Follow up chronic back pain.  He stated that his back pain had a
            flare-up for the last couple of months since he arrived at this prison
17          [CSP-Sac].  He stated that the mattress that he received was lumpy,
            and he attributed the pain as being caused by this mattress.
18          Eventually he received a new mattress just a couple of days ago,
            but he is still complaining of a lot of pain in his back.  I reviewed
19          his medical records and it showed that he had chronic back pain in
            the past, and there was an MRI study in 2004 which reported
20          multiple levels of disk degeneration with annular bulging and
            slight narrowing of the bilateral neural foramen in the L3, L4, and
21          L5 levels. . . .

22          ASSESSMENT/PLAN: . . . .

23          3.  Chronic back pain but with new flare-up but since the patient
            received his new mattress, I expect that the patient's pain will get
24          better.  Regarding his previous MRI, I explained to the patient that
            there was nothing significant in the MRI, because of his age.  I
25          further explained that with his age most people will have some
            degeneration of the disks and some facet arthritis.  As I am not
26          excited about the MRI report, I would base on clinical findings and

                                              5

1
2
3

> make sure that he does not have any nerve damage. If not, I will
> just give the patient Tylenol or ibuprofen for pain control but
> because of time limitations and the restriction, I cannot perform
> further tests. I will bring the patient back in 30 days for a low back
> pain checkup.

4 ECF No. 44 at 39-40. The report does not provide any indication that plaintiff received an

5 injection or other treatment on September 16, 2010, or that his back was still "locked."

6          Plaintiff now alleges that defendant Strohmaier violated his Eighth Amendment

7 rights as follows: (1) by interfering with his right to see a doctor; (2) by endangering plaintiff's

8 life by trying to place him into a cell while handcuffed when defendant knew plaintiff suffered

9 from seizures; and (3) by exhibiting deliberate indifference. See SAC at 9-12. Plaintiff alleges

10 that defendant's actions have caused him atypical and significant hardship "as plaintiff's back

11 has never been this messed up, or caused him this much pain. A year later plaintiff's back is still

12 messed up." See id. at 10-11. Plaintiff seeks compensatory and punitive damages. Id. at 11-12.

13              **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

14          Defendant moves for summary judgment. ECF No. 36. Defendant argues that

15 defendant did not subject plaintiff to any harm, because plaintiff chose to return to his cell rather

16 than wait in the holding cell. See ECF No. 36-1 at 4. Defendant also argues that his conduct

17 was not deliberately indifferent because when plaintiff refused to wait in the holding cell,

18 defendant did not force plaintiff to stay. Id. at 5. He instead permitted plaintiff to return to his

19 cell. Id. Defendant further argues that he is entitled to qualified immunity because "reasonable

20 correctional officers could have believed that it was proper to address Chappell's refusal to

21 remain in the holding cell in the same manner as [defendant]." See ECF No. 36-1 at 5.

22 Defendant does not directly address plaintiff's claims that defendant delayed or interfered with

23 plaintiff's treatment.

24          Plaintiff opposes the motion for summary judgment. He initially asks the court

25 not to rule on the motion until he has had a chance to obtain information by subpoenas. See ECF

26 No. 44 at 2. Plaintiff then argues that the state's regulations and Penal Code conflict with the

1   practice of handcuffing inmates cited by defendant in his declaration.  <u>See</u> ECF No. 44 at 10-11.

2   Plaintiff argues that defendant denied plaintiff the right to see the doctor, and subjected plaintiff

3   to an additional month of pain and suffering while plaintiff waited to be rescheduled.  <u>Id.</u> at 13,

4   16.

5                   <u>Summary Judgment Standards Under Rule 56</u>

6           Summary judgment is appropriate when it is demonstrated that there exists "no

7   genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

8   law." Fed. R. Civ. P. 56(c).

9           Under summary judgment practice, the moving party

10          always bears the initial responsibility of informing the district
            court of the basis for its motion, and identifying those portions of
11          "the pleadings, depositions, answers to interrogatories, and
            admissions on file, together with the affidavits, if any," which it
12          believes demonstrate the absence of a genuine issue of material
            fact.

13

14  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

15  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

16  judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

17  answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be

18  entered, after adequate time for discovery and upon motion, against a party who fails to make a

19  showing sufficient to establish the existence of an element essential to that party's case, and on

20  which that party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete failure of

21  proof concerning an essential element of the nonmoving party's case necessarily renders all

22  other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so

23  long as whatever is before the district court demonstrates that the standard for entry of summary

24  judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

25          If the moving party meets its initial responsibility, the burden then shifts to the

26  opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

7

1    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

2    establish the existence of this factual dispute, the opposing party may not rely upon the

3    allegations or denials of its pleadings but is required to tender evidence of specific facts in the

4    form of affidavits, and/or admissible discovery material, in support of its contention that the

5    dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

6    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

7    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

8    (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

9    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

10   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

11   1436 (9th Cir. 1987), overruled on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

12   1564, 1575 (9th Cir. 1990) (en banc).

13          In the endeavor to establish the existence of a factual dispute, the opposing party

14   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

15   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

16   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

17   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

18   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

19   committee's note on 1963 amendments).

20          In resolving the summary judgment motion, the court examines the pleadings,

21   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

22   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

23   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

24   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

25   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

26   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

1   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

2   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

3   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

4   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

5   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted); see also Carmen v. San

6   Francisco Unified School Dist., 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a

7   defendant acted from an unlawful motive, without evidence supporting that belief, is no more

8   than speculation or unfounded accusation . . . .")

9                    Analysis

10                    Plaintiff alleges that defendant Strohmaier endangered his life by trying to place

11  him in a small holding cage while handcuffed.   Plaintiff also alleges that defendant Strohmaier

12  offered a medical diagnosis when he told plaintiff he would be alright in the small holding cage.

13  Plaintiff further alleges that defendant interfered with plaintiff's right to see a doctor, and

14  showed deliberate indifference.

15                    The undersigned construes plaintiff's allegations to present the following claims:

16  (1) that defendant attempted to subject plaintiff to potentially life-threatening conditions, in

17  violation of the Eighth Amendment, by directing him to enter the holding cage while handcuffed;

18  and (2) that when plaintiff elected not to enter the holding cage, defendant caused a delay in

19  plaintiff's medical treatment, in violation of the Eighth Amendment, by returning plaintiff to his

20  cell.  Defendant's statement that plaintiff would be "alright" in the holding cage cannot fairly be

21  characterized as a "medical diagnosis" so as to support an independent Eighth Amendment

22  violation.  See Lum v. County of San Joaquin, 2012 WL 1027667 *11 (E.D. Cal. Mar. 23, 2012)

23  ("Obviously the officers in this case are not physicians and have no training sufficient to

24  diagnose."); see also Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (describing division of

25  labor in prisons).  The more reasonable approach is to consider the statement as part of the

26  totality of circumstances surrounding defendant's alleged attempt to endanger plaintiff.

1        *Endangerment*

2        The Civil Rights Act under which this action was filed provides as follows:

3        Every person who, under color of [state law] . . . subjects, or
         causes to be subjected, any citizen of the United States . . . to the
4        deprivation of any rights, privileges, or immunities secured by the
         Constitution . . . shall be liable to the party injured in an action at
5        law, suit in equity, or other proper proceeding for redress.

6 42 U.S.C. § 1983.

7        The statute requires that there be an actual connection or link between the actions

8 of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v.

9 Department of Social Servs., 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71

10 (1976); Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988).  "A person 'subjects' another to

11 the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative

12 act, participates in another's affirmative acts or omits to perform an act which he is legally

13 required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588

14 F.2d 740, 743 (9th Cir. 1978), (citing Sims v. Adams, 537 F.2d 829 (5th Cir. 1976)).  The

15 requisite causal connection can be established not only by some kind of direct personal

16 participation in the deprivation, but also by setting in motion a series of acts by others which the

17 actor knows or reasonably should know would cause others to inflict the constitutional injury.

18 Id. at 743-44.

19        The Eighth Amendment requires that inmates be furnished with the basic human

20 needs, one of which is reasonable safety.  Helling v. McKinney, 509 U.S. 25, 33 (1993) (inmate

21 stated colorable Eighth Amendment claim when he alleged that current compelled exposure to

22 environmental tobacco smoke posed an unreasonable risk to inmate's health).  The amendment

23 protects against future harms.  Id.  For example, inmates may state a colorable Eighth

24 Amendment claim when they allege exposure to unsafe conditions that have not yet resulted in

25 injury.  Id. ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-

26 threatening condition in their prison on the ground that nothing yet had happened to them.")

1  However, actual exposure to the unsafe condition is required.  Even a direct threat of harm,

2  independent of actual subjection to danger, does not violate the Eighth Amendment.  Gaut v.

3  Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (prison guards' alleged threats to beat inmate did not

4  state a claim under the Eighth Amendment).

5          Summary  judgment is appropriate in this case as to those claims which revolve

6  around defendant Strohmaier's direction that plaintiff wait in the small holding cage.  It is

7  undisputed that plaintiff never entered the cage, and instead returned to his cell.  Accordingly, he

8  was never subjected to the allegedly life-threatening condition of being handcuffed in the cage.

9  On these facts defendant did not endanger plaintiff, and did not violate the Eighth Amendment.[2]

10 The circumstances described by plaintiff in his Second Amended Complaint constitute at most

11 an attempted Eighth Amendment violation, premised upon plaintiff's speculation that he might

12 have been injured had he been held inside the holding cage while handcuffed.  Such potential for

13 injury cannot support relief under § 1983, because the attempt never put plaintiff in harm's way.

14          Plaintiff appears to argue that he was forced to return to his cell as a result of the

15 attempt, and that his medical treatment was delayed for one month as a consequence of the

16 return.  Because a delay in treatment is independently cognizable as an Eighth Amendment

17 claim, the undersigned will analyze it separately.

18

19

_____

20      [2]  Because plaintiff was never exposed to the potential harm, the court need not consider
   defendant's state of mind in directing plaintiff to enter the cage -- specifically, whether
21 defendant's remark that plaintiff would be alright in the holding cage reflected deliberate
   indifference to plaintiff's medical need.  See Farmer v. Brennan, 511 U.S. 825, 844 (1994)
22 ("Prison officials charged with deliberate indifference might show, for example, that they did not
   know of the underlying facts indicating a sufficiently substantial danger and that they were
23 therefore unaware of a danger, or that they knew the underlying facts but believed (albeit
   unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.")

24
       The undersigned also need not examine whether defendant would have violated state
25 laws and regulations by maintaining plaintiff's restraints in the holding cage, as plaintiff claims.
   The undersigned notes, however, that none of the code sections or regulations cited by plaintiff
26 appear to forbid handcuffing inmates while the inmate awaits a doctor.

*Delay in Medical Treatment*

The Ninth Circuit has held that, in order to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The Ninth Circuit has additionally recognized that a delay in treatment may state a claim under 42 U.S.C. § 1983; however, the delay must result in further harm to the inmate. See, e.g., Hallet v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989); Shapely v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) ("[M]ere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference. . . . [Prisoner] would have no claim for deliberate medical indifference unless the denial was harmful.")

When an inmate seeks money damages, as opposed to injunctive relief, the inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. See Leer, 844 F.2d at 633. Sweeping conclusory allegations will not suffice to prevent summary judgment. Id. at 634. The inmate must show: (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the Eighth Amendment; and (2) that this indifference was the actual and proximate cause of the deprivation of the inmate's right to be free from cruel and unusual punishment. Id.

As noted above, defendant has not specifically addressed the delayed treatment aspect of plaintiff's Eighth Amendment claim. However, the motion for summary judgment fairly includes this alternate, incipient theory as to defendant Strohmaier. See ECF No. 36-1 (arguing that defendant did not subject plaintiff to any unconstitutional condition or act with deliberate indifference in escorting him to the cage and thereafter to his cell). Accordingly, the court will review the record to determine if plaintiff, the non-moving party who will bear the burden of proof at trial, has failed to make a showing sufficient to establish the existence of an

12

1    element essential to its case.  See Celotex, 477 U.S. at 322.

2                    In order to carry his burden, plaintiff would have to present evidence tending to

3    show: (1) that he had a serious medical need; and (2) that defendant's response to the need was

4    deliberately indifferent:

> In the Ninth Circuit, the test for deliberate indifference consists of
> two parts.  *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991),
> *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104
> F.3d 1133 (9th Cir. 1997) (en banc).  First the plaintiff must show
> a "serious medical need" by demonstrating that "failure to treat a
> prisoner's condition could result in further significant injury or the
> 'unnecessary and wanton infliction of pain.'" *Id.* at 1059 (citing
> *Estelle*, 429 U.S. at 104, 97 S.Ct. 285).  Second, the plaintiff must
> show the defendant's response to the need was deliberately
> indifferent.  *Id.* at 1060.  This second prong – defendant's response
> to the need was deliberately indifferent – is satisfied by showing
> (a) a purposeful act or failure to respond to a prisoner's pain or
> possible medical need and (b) harm caused by the indifference.  *Id.*
> Indifference "may appear when prison officials deny, delay or
> intentionally interfere with medical treatment...." *Id.* at 1059
> (quoting *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir.
> 1988)).  Yet, an 'inadvertent [or negligent] failure to provide
> adequate medical care' alone does not state a claim under § 1983.
> *Id.* (citing *Estelle*, 429 U.S. at 105, 97 S.Ct. 285).  A prisoner need
> not show his harm was substantial; however, such would provide
> additional support for the inmate's claim that the defendant was
> deliberately indifferent to his needs.  *Id.* at 1060.  If the harm is an
> 'isolated exception' to the defendant's 'overall treatment of the
> prisoner [it] ordinarily militates against a finding of deliberate
> indifference.' *Id.* (citations omitted).

18   See Jett, 439 F.3d at 1096.

19                   Summary judgment is appropriate as to those claims which involve defendant's

20   interference with plaintiff's medical visit and deliberate indifference to plaintiff's medical needs,

21   because plaintiff has failed to carry his burden of proof.  See Celotex, 422 U.S. at 322.

22   Specifically, plaintiff has failed to establish that defendant Strohmaier caused plaintiff further

23   harm by interfering with or delaying plaintiff's treatment.  See Leer, 844 F.2d a 633-34; see also

24   McGuckin v. Smith, 974 F.2d 1051, 1061 (9th Cir. 1992), overruled on other grounds by WMX

25   Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (summary judgment appropriate

26   where plaintiff failed to show that named individual defendants failed to perform their duties

                                                    13

1    properly).

2              "*Serious Medical Need*"

3              In order to show that he has a serious medical need, plaintiff must demonstrate

4    that the failure to treat his back condition could result in further, significant injury or the wanton

5    and unnecessary infliction of pain.  See McGuckin, 974 F.2d at 1059.  "The existence of an

6    injury that a reasonable doctor or patient would find important and worthy of comment or

7    treatment; the presence of a medical condition that significantly affects an individual's daily

8    activities; or the existence of chronic and substantial pain are examples of indications that a

9    prisoner has a 'serious' need for medical treatment."  Id. at 1059-60.

10             This plaintiff has done, as he has provided evidence that he suffers from

11   degenerative back and disc problems, and that he was treated for pain as early as 2004.  See, e.g.,

12   SAC at 17- 20, ECF No. 44 at 39-40.  He has also stated that he suffered pain when he did not

13   see the doctor on August 12th, and he described this pain as debilitating.  See ECF No. 44 at 14.

14   Defendant has not offered any evidence in rebuttal.  Plaintiff has accordingly established the

15   existence of chronic and substantial pain, indicating a serious need for treatment.

16             "*Deliberate Indifference*"

17             In order to show that defendant's response was deliberately indifferent, plaintiff

18   must demonstrate both a purposeful act or failure to respond to his pain or possible medical

19   need, and harm caused by the indifference.  This plaintiff has not done.  His evidence shows that

20   he wanted to see the doctor for treatment on August 12th for his "locked" back, that he did not

21   get to see the doctor on that day, that defendant returned plaintiff to his cell after plaintiff

22   declined to wait in the holding cage selected by defendant, and that he saw a doctor on

23   September 16, 2010, roughly a month after the incident at issue.  The undersigned will assume

24   for purposes of analysis that defendant Strohmaier was aware on August 12 of the severity of

25   plaintiff's pain.

26             However, plaintiff does not explain why defendant Strohmaier was responsible

                                        14

1    for the missed appointment, or – more importantly – for the one-month wait until plaintiff's

2    September 16, 2010 appointment.  See OSU Student Alliance v. Ray, 699 F.3d 1053, 1072, n.12

3    (9th Cir. 2012) ("To state a § 1983 claim against a government defendant, the plaintiff must

4    allege that the defendant acted with sufficient culpability to breach a duty imposed by the

5    relevant provision of federal law."); McGuckin, 974 F.2d at 1062 (individual doctors not

6    responsible for delay when prison referral committee and prison administration responsible for

7    scheduling surgical treatments and "charged with ensuring that [plaintiff's] surgery occurred

8    promptly."); Leer, 844 F.2d at 633-34.  Plaintiff's conclusory allegations that "defendant refused

9    to allow plaintiff to see the doctor" (SAC at 12; ECF No. 44 at 5) are unsupported by the record,

10   and insufficient to meet plaintiff's burden on summary judgment.  See Carmen, 237 F.3d at

11   1028.  Nothing in the complaint or in plaintiff's evidentiary showing suggests that Strohmaier

12   had any authority over the scheduling of medical appointments.

13         In addition, plaintiff has not raised a triable issue of fact regarding harm from the

14   delay.  Plaintiff alleges in very general terms that his back "has never been this messed up," SAC

15   at 10-11, but does not provide any facts linking the state of his back at the time the complaint

16   was filed to the events of August 12, 2010 – let alone to defendant Strohmaier.

17         While the undersigned fully credits plaintiff's allegations of debilitating pain

18   between August 12, 2010 and September 16, 2010, plaintiff has presented no reason to believe

19   that his pain during this period was different from the chronic pain he has suffered before and

20   since, or that his underlying condition was aggravated by the delay at issue.  Cf. Jett, 439 F.3d at

21   1097 (inmate presented sufficient information to present a genuine issue of material fact where

22   inmate had fractured his thumb yet did not see a hand specialist, as recommended by other

23   treating doctors, for more than nineteen months after the initial injury, in which time the fracture

24   had healed badly, resulting in continuing diminished use of the hand); Shapley, 766 F.2d at 407

25   (mere delay in surgery, without more, is insufficient to state a claim of deliberate medical

26   indifference, where plaintiff alleged a five-year delay in knee surgery, causing permanent

1   damage to his knee).[3]   Quite to the contrary, the September 16, 2010 doctor's note attributed

2   plaintiff's "flare up" to the mattress he had been sleeping on, not to the unavailability of any

3   particular treatment the previous month.  ECF No. 44 at 39.  Accordingly, the asserted injury is

4   too attenuated from the defendant's conduct to support relief.

5           Because plaintiff has failed to establish that the defendant was responsible for the

6   delay in plaintiff's treatment, and that plaintiff suffered further harm as a result of the one-month

7   delay, defendant is entitled to summary judgment.

8           Qualified Immunity

9           Because defendant is entitled to summary judgment for the reasons explained

10  above, the court need not reach the question of qualified immunity.

11          **PLAINTIFF'S REQUEST FOR SUBPOENAS**

12          By order filed November 26, 2012, the court denied plaintiff's "Motion for

13  Court's Assistance in Serving Attached Subpoenas."  See ECF Nos. 43, 51.  The court noted in

14  that order that it had previously, on October 1, 2012, denied plaintiff's motion to reopen

15  discovery.  See ECF No. 51 at 2.  The court found that plaintiff was again seeking to reopen

16  discovery, and had failed to establish good cause to warrant modification of the court's prior

17  scheduling order, under which discovery had closed on August 31, 2012.  Id.

18          Plaintiff now has filed a "Request for Subpoenas," and appeals to be asking that

19  the court return to him subpoenas which were attached to his prior motion.  Plaintiff's request

20  should be denied, as the subpoenas were filed as part of plaintiff's motion and are accordingly

21  now part of the Clerk's record.  See, generally, L.R. 138.

22  ───────────────

23          [3]  In McGuckin, supra, the Ninth Circuit found that the unnecessary continuation of
    plaintiff's chronic condition and accompanying pain caused "harm" sufficient to support a §
24  1983 claim.  However, in that case, plaintiff waited more than three and half years after an injury
    causing  massive herniation of plaintiff's back and upper torso before receiving the surgery
25  required to correct his condition.  974 F.2d at 1061.  In this case, there is no indication in the
    record that any significantly ameliorative solution is available to plaintiff and was withheld as
26  the result of defendant's actions.

1    In addition, plaintiff argues that he needs the subpoenas to locate two inmates

2   who witnessed the exchange between plaintiff and defendant on August 12, 2010.  See ECF No.

3   44 at 2.  However, plaintiff names four witnesses in his opposition.  See id. at 4.  And, as noted

4   infra, this witness testimony would have little probative value, as plaintiff cannot hold defendant

5   liable for an attempted § 1983 violation.

6    Discovery has closed, and the court has twice denied plaintiff's motion to reopen

7   discovery.  Plaintiff's failure to seek discovery timely during the open period does not now

8   constitute good cause to reopen.

9    Accordingly, IT IS HEREBY RECOMMENDED that

10    1.  Plaintiff's "Request for Subpoenas" (ECF No. 52) be denied;

11    2.  Defendant's motion for summary judgement (ECF No. 36) be granted; and

12    3.  This action be closed.

13    These findings and recommendations are submitted to the United States District

14   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

15   eight days after being served with these findings and recommendations, any party may file

16   written objections with the court and serve a copy on all parties.  Such a document should be

17   captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

18   objections shall be served and filed within fourteen days after service of the objections.  The

19   parties are advised that failure to file objections within the specified time may waive the right to

20   appeal the District Courts order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21   DATED: January 29, 2013.

22

23        `

   _____

   ALLISON CLAIRE

24   UNITED STATES MAGISTRATE JUDGE

25

26