UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REX CHAPPELL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DUC, et al.,<br><br>　　　　Defendants. | No. 2:10-cv-02676 KJM AC P<br><br><br>FINDINGS & RECOMMENDATIONS |

　　　　Plaintiff, a state prisoner, proceeds pro se and in forma pauperis with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. This matter was referred to the undersigned by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Currently pending before the court is defendant's motion for summary judgment. ECF No. 63. The court has considered plaintiff's declaration and exhibits in opposition to the motion as well as those documents originally filed with the second amended complaint. ECF Nos. 19, 66. For the reasons discussed below, the undersigned recommends granting defendant's motion for summary judgment.

I.　　Procedural History

　　　　On March 30, 2013 the district court granted Defendant Strohmaier's motion for summary judgment in part. ECF No. 57. It dismissed plaintiff's claim that Defendant Strohmaier endangered plaintiff's life in violation of the Eighth Amendment. Id. at 2-3. However, it denied the motion as to plaintiff's claim that Defendant Strohmaier was responsible for causing a delay

1

in medical treatment for plaintiff's back condition. Id. The case was therefore remanded for further proceedings on this single remaining claim against Defendant Strohmaier, the only remaining defendant in this action.[1] The instant summary judgment motion followed.

II.      Allegations in the Second Amended Complaint

Based on the procedural posture of this case, the facts and allegations of the second amended complaint will be limited to the single remaining Eighth Amendment claim. Plaintiff is a California state prisoner who, on August 12, 2010, was housed in the administrative segregation unit ("SHU") at California Prison – Sacramento ("CSP-Sac"). ECF No. 19 at 5. Defendant Strohmaier is a correctional officer at CSP-Sacramento.

After being handcuffed by Officer Whitehead on August 12, 2010, plaintiff was then turned over to Defendant Strohmaier at the dining hall to be escorted to a medical appointment. ECF No. 19 at 6. Plaintiff asked defendant if he was going to take the handcuffs off once he was in the medical holding cell, and defendant stated no. ECF No. 19 at 6-8. After arguing with the defendant about the handcuffs, defendant pulled his riot stick (baton) and stated, "That's it, take it back to you cell." Id. at 8. Plaintiff complied and walked back to his cell. Once Defendant Strohmaier escorted plaintiff back to his cell, plaintiff asked defendant if he would come back to get plaintiff once the doctor finished seeing the other inmates who were waiting. Id. Defendant stated, "take it in your cell, I ain't gonna tell you again." Id. Plaintiff was not permitted to see the doctor on August 12, 2010 as a result of Defendant Strohmaier's actions, which caused plaintiff to suffer additional back pain. Id. at 11.

III.     Defendant's Motion for Summary Judgment

In the current motion, Defendant Strohmaier asserts that he is entitled to judgment as a matter of law because: 1) he did not subject plaintiff to a substantial risk of harm; 2) he did not act with deliberate indifference; 3) plaintiff was the cause of any delay in receiving medical treatment for his back condition; and, 4) defendant is entitled to qualified immunity. See ECF No. 63-1 at 2.

---

[1] By order filed January 6, 2012, defendants Duc, Guzman, Silva, Daly, Pereira, and Virga were dismissed from this action. ECF No. 25.

IV. Plaintiff's Opposition

Plaintiff contends that Defendant Strohmaier was aware of plaintiff's need for medical treatment on August 12, 2010 because of his history of seizures as well as the fact that his back was locked to one side. ECF No. 66 at 3. As a result of the delay in seeing a doctor due to Defendant Strohmaier's actions, plaintiff asserts that his back condition deteriorated further and now he walks with the aide of a cane, requires physical therapy, and takes morphine for his lower back pain.[2] ECF No. 66 at 5.[3]

In addition, plaintiff argues that his medical record from August 17, 2010 is fabricated. ECF No. 66 at 6. In support of this claim, plaintiff alleges that he was at the federal courthouse in Sacramento on August 16-17, 2010 for a jury trial in another one of his civil cases, Chappell v. McCargor, 2:02-cv-02299-GEB-KJM. However, a review of the court docket in that case indicates that the jury returned its verdict on July 19, 2010, almost a full month before the incident in dispute in the current case. ECF No. 67 at 16 (Judgment in 2:02-cv-02299-GEB-KMJ). Therefore, plaintiff has failed to establish that his medical records submitted with the summary judgment motion are fabricated.

Plaintiff also challenges the qualifications of Dr. Ma, who subsequently treated plaintiff and submitted an affidavit along with defendant's summary judgment motion, because he is not an orthopedic surgeon or back specialist. ECF No. 66 at 6-7. In an effort to undercut Dr. Ma's evaluation and assessment, plaintiff submits medical records from before and after the August 12, 2010 missed medical appointment. See ECF No. 66 at 28-31, 33-35.

---

[2] A large portion of plaintiff's opposition to the current summary judgment motion, rehashes the endangerment claim against Defendant Strohmaier which this court has already dismissed. See e.g., ECF No. 66 at 3, 8-11. The court further notes that the additional chronos which plaintiff submitted as exhibits to the current summary judgment motion still fail to establish that he had a waist chain chrono effective August 12, 2010. See ECF No. 66 at 52-55, 57. These chronos all became effective after August 2010. Defendant objects to these chronos for this same reason. ECF No. 68 at 1.

[3] A verified pleading constitutes an opposing affidavit for purposes of the summary judgment rule. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004). Therefore, plaintiff's declaration in opposition to summary judgment may be considered where it is based on personal knowledge and sets forth specific facts admissible in evidence. McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987).

3

1  V.     Defendant's Objections to Plaintiff's Evidence in Opposition

2       Defendant filed an objection to various exhibits filed by plaintiff in his opposition to the
3  summary judgment motion. ECF No. 68. Defendant's first objection is to the declaration of
4  Timothy Watts on the grounds that it lacks foundation, is vague as to time, and contains improper
5  lay opinion testimony. Id. at 1. As this declaration only pertains to the waist chain policy at
6  CSP-Sac, it is only relevant to the endangerment claim which has already been dismissed.
7  Accordingly, the court will not consider this evidence in reference to the pending motion. The
8  defendant's objection is therefore moot.

9       For the same reason, the court also declines to consider the Comprehensive
10 Accommodation Chronos to which defendant objects because they all post-date the incident in
11 dispute and, are, therefore irrelevant. See ECF No. 66 at 52-57.

12      Defendant also objects to a letter from the law firm of Rosen, Bien, Galvan, and Grunfeld
13 on the grounds that it is hearsay and contains improper lay opinion testimony. ECF No. 68 at 2.
14 Because the letter pertains to events occurring at the California Correctional Institution and not
15 CSP-Sac, it is not relevant to the present litigation. Therefore, it will not be considered by the
16 court. Accordingly, defendant's objection is moot.

17      Likewise, Operational Procedure No. 3 pertaining to CSP-Sac's policy for escorting
18 general population inmates is not relevant to the current litigation because it is undisputed that at
19 the time of the August 12, 2010 incident, plaintiff was not in the general population, but rather in
20 administrative segregation. For this reason, the Operational Procedure will not be considered by
21 the court. Defendant's objection to this additional piece of evidence is also moot. See ECF No.
22 68 at 2.

23      The only remaining objection to plaintiff's evidence in opposition to summary judgment
24 is to a second affidavit from inmate Timothy Watts. ECF No. 66 at 59. Defendant objects on the
25 basis that it is vague as to the time period discussed, it lacks foundation, contains improper lay
26 opinion, and contains hearsay. ECF No. 68.

27      Pursuant to Rule 56(c)(4) of the Federal Rules of Civil Procedure, an affidavit submitted
28 in opposition to a summary judgment motion "must be made on personal knowledge, set out facts

1  that would be admissible in evidence, and show that the affiant or declarant is competent to testify
2  on the matters stated." At the summary judgment stage, the court focuses not on the admissibility
3  of evidence's form but on the admissibility of its contents. Block v. City of Los Angeles, 253
4  F.3d 410, 418–19 (9th Cir. 2001).

5  The declaration at issue is based on what the affiant personally observed about plaintiff's
6  back. Therefore, the portions of the declaration stating that plaintiff was "bent over to his left
7  side" during the months of July-October 2010 and that he observed plaintiff using a cane in 2012
8  are admissible evidence. ECF No. 66 at 59. The remaining portion of the declaration is deemed
9  inadmissible as it is not based on personal knowledge of the affiant. Thus, the court will sustain
10 the objection in part, and will consider only the portion of the affidavit that is based on personal
11 knowledge rather than hearsay or opinion.

12 VI.     Legal Standards for Summary Judgment

13 Summary judgment is appropriate when the moving party "shows that there is no genuine
14 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
15 Civ. P. 56(a).

16 Under summary judgment practice, the moving party "initially bears the burden of
17 proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation,
18 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).
19 The moving party may accomplish this by "citing to particular parts of materials in the record,
20 including depositions, documents, electronically stored information, affidavits or declarations,
21 stipulations (including those made for purposes of the motion only), admission, interrogatory
22 answers, or other materials" or by showing that such materials "do not establish the absence or
23 presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to
24 support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden
25 of proof at trial, "the moving party need only prove that there is an absence of evidence to support
26 the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see
27 also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate
28 time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be

6

1  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

2  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

3  party "must do more than simply show that there is some metaphysical doubt as to the material

4  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

5  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

6  omitted).

7        Plaintiff was contemporaneously advised of the requirements for opposing a motion

8  pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See ECF No. 63 at 2-3; see also

9  Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035

10 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

11 VII.    Facts

12       All facts are undisputed unless noted.  On August 10, 2010, Chappell completed a Health

13 Care Services Request Form requesting to see a physician for weight loss and a liquid nutritional

14 supplement.[4]  ECF No. 63-3 at 12.  On August 11, 2010, a Registered Nurse Baiden reviewed the

15 Health Care Services Request Form and scheduled Chappell for the doctor (MD) line on August

16 12, 2010.  Id.

17       In August 2010, any administrative segregation inmate who was waiting for a doctor visit

18 was required to remain in a holding cell, handcuffed behind his back, unless he showed a valid

19 waist chain chrono to the escorting officer.[5]  ECF No. 63-3 at 3 (Declaration of B. Shrohmaier).

20 This practice helped ensure safety and security.  Id.

21       This court has previously determined based on the evidence in the record that plaintiff did

---

[4] While plaintiff asserts that he was not scheduled to see Dr. Duc "for anything but his back," he submits no evidence to dispute the Health Care Services Request form that plaintiff was himself responsible for filling out.  See ECF No. 66 at 7.  In this vein, the court notes that plaintiff cannot create a triable issue of fact by contradicting himself.  See Radobenko v. Automated Equipment Corp., 520 F.2d 540, 544 (9th Cir. 1975).

[5] In dispute of this fact, plaintiff submitted Operational Procedure No. 3 from CSP-Sac dated May 2013.  ECF No. 66 at 61-67.  Even if this Operational Procedure was in effect in August 2010, which is far from established, it would not be relevant because it only applies to inmate escorts from general population.  It is undisputed that Chappell was an administrative segregation inmate in August 2010.  Therefore, this Operational Procedure has no bearing on the court's analysis and will therefore be disregarded.

1    not have a valid waist chain chrono on August 12, 2010.  See ECF Nos. 53 at 3 (Findings and
2    Recommendation), 57 (Order partially adopting Findings and Recommendations).  As a result,
3    prison staff cuffed Chappell's hands behind his back and Strohmaier escorted Chappell to the
4    medical clinic to see Dr. Duc.  ECF Nos. 19 at 6-7; 63-3 at 3.

5    According to defendant, Chappell objected to waiting for the doctor visit in a small
6    holding cell with his hands cuffed behind his back.  ECF No. 63-3 at 4.  The medical clinic area
7    did not have a larger holding cell in which Chappell could have waited.  ECF No. 63-3 at 4.
8    Strohmaier told Chappell that he could wait for his doctor visit in the holding cell with his hands
9    cuffed behind his back, or he could return to his cell.  ECF No. 63-3 at 4.  According to
10   defendant, Chappell chose to have Strohmaier escort him back to his cell.  Id.

11   Plaintiff contends that Defendant Strohmaier extended his baton and told plaintiff "that's
12   it, take it back to your cell."  ECF No. 66 at 7.  When plaintiff asked Defendant Strohmaier if he
13   would come and get plaintiff after the other inmates had seen the doctor, Defendant Strohmaier
14   refused, according to the plaintiff.  Id.

15   Strohmaier completed a refusal of examination form on August 12, 2010, which stated:
16   "I/M refused to go into cage to wait his turn."  S. Belan signed the form as a witness.  ECF No.
17   63-3 at 13.  The Primary Care Progress Note for August 12, 2010 indicates that Chappell refused
18   to come to the MD line and had refused twice in the past.  ECF No. 63-3 at 14.

19   On August 14, 2010, Chappell completed a Health Care Services Request Form
20   requesting to see a physician for back pain and weight loss.  ECF No. 63-3 at 15.  On August 18,
21   2010, Nurse Taylor noted on the Health Care Services Request Form that Chappell was a no show
22   for his appointment on August 17, 2010.  Id.

23   On August 26, 2010, fourteen days after the scheduled appointment with Dr. Duc,
24   Chappell was seen by a registered nurse for his back pain.  ECF No. 63-3 at 16-17.  The nurse
25   noted that Chappell had back pain for the past two weeks.  Id.  The nurse further noted no
26   swelling, normal range of motion (ROM), and steady gait and stance.  Id.  The nurse indicated
27   that Chappell refused medication.  Id.  The nurse referred Chappell to a doctor as a routine
28   referral.  Id.

On September 16, 2010, Chappell was seen by Dr. Ma.  ECF No. 63-3 at 18-19.  Chappell attributed his back pain to a lumpy mattress.  ECF Nos. 63-3 at 18, 22 (Declaration of J. Ma, M.D.).  Dr. Ma noted that Chappell now had a new mattress but the pain persisted.  ECF No. 63-3 at 18.  Dr. Ma expected that Chappell's back pain would improve soon with the new mattress.  ECF No. 63-3 at 18, 23.  Dr. Ma did not attribute Chappell's back pain to the unavailability of any particular treatment the previous month.  Id.  Dr. Ma noted that Chappell had an MRI of his back in 2004.  Id.  Dr. Ma explained that the prior MRI indicated nothing significant, given Chappell's age.  ECF No. 63-3 at 18-19, 23.  Dr. Ma further explained that most people at Chappell's age will have some degeneration of the disks and facet arthritis.  Id.  Dr. Ma requested a further follow-up appointment in 30 days for a back pain checkup.  ECF No. 63-3 at 19, 23.

Plaintiff counters this medical evidence with an affidavit from a fellow inmate, Timothy Watts.  ECF No. 66 at 59.  Mr. Watts avers that he saw plaintiff during the months of July-October 2010 and he was bent over to his left side.  Id.  The affiant further states that he saw plaintiff again in 2012 and by then he was using a cane.  Id.

Strohmaier was not responsible for scheduling appointments with physicians or other medical staff.  ECF No. 63-3 at 4.  Strohmaier was not aware that Chappell would be unable to make a new appointment in a timely manner.  Id.  Strohmaier was not responsible for Chappell's missed appointment on August 17, 2010.  Id.  Strohmaier was not aware that returning Chappell to his cell on August 12, 2010, would cause a substantial delay in access to healthcare or cause Chappell any harm.  Id.

VIII.  Analysis

The civil rights statute under which plaintiff is proceeding, requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976); Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which

1  complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978), (citing Sims v. Adams,
2  537 F.2d 829 (5th Cir. 1976)). The requisite causal connection can be established not only by
3  some kind of direct personal participation in the deprivation, but also by setting in motion a series
4  of acts by others which the actor knows or reasonably should know would cause others to inflict
5  the constitutional injury. Id. at 743-44.

6  When an inmate seeks money damages, as opposed to injunctive relief, the inquiry into
7  causation must be individualized and focus on the duties and responsibilities of each individual
8  defendant whose acts or omissions are alleged to have caused a constitutional deprivation. See
9  Leer, 844 F.2d at 633. Sweeping conclusory allegations will not suffice to prevent summary
10 judgment. Id. at 634. The inmate must show: (1) that the specific prison official, in acting or
11 failing to act, was deliberately indifferent to the mandates of the Eighth Amendment; and (2) that
12 this indifference was the actual and proximate cause of the deprivation of the inmate's right to be
13 free from cruel and unusual punishment. Id.

14 The Ninth Circuit has held that, in order to maintain an Eighth Amendment claim based
15 on prison medical treatment, an inmate must show "deliberate indifference to serious medical
16 needs." See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429
17 U.S. 97, 104 (1976)). The Ninth Circuit has additionally recognized that a delay in treatment may
18 state a claim under 42 U.S.C. § 1983; however, the delay must result in further harm to the
19 inmate. See, e.g., Hallet v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Hunt v. Dental Dept., 865
20 F.2d 198, 200 (9th Cir. 1989); Shapely v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404,
21 407 (9th Cir. 1985) ("[M]ere delay of surgery, without more, is insufficient to state a claim of
22 deliberate medical indifference. . . . [Prisoner] would have no claim for deliberate medical
23 indifference unless the denial was harmful.")

24 Summary judgment is appropriate as to those claims which involve defendant's
25 interference with plaintiff's medical visit and deliberate indifference to plaintiff's medical needs,
26 because plaintiff has failed to carry his burden of proof. See Celotex, 422 U.S. at 322.
27 Specifically, plaintiff has failed to establish that Defendant Strohmaier caused plaintiff further
28 harm by interfering with or delaying plaintiff's treatment. See Leer, 844 F.2d a 633-34; see also

1  McGuckin v. Smith, 974 F.2d 1051, 1061 (9th Cir. 1992), overruled on other grounds by WMX
2  Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (summary judgment appropriate
3  where plaintiff failed to show that named individual defendants failed to perform their duties
4  properly).

### A. Serious Medical Need

In order to show that he has a serious medical need, plaintiff must demonstrate that the failure to treat his back condition could result in further, significant injury or the wanton and unnecessary infliction of pain. See McGuckin, 974 F.2d at 1059. "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." Id. at 1059-60.

This plaintiff has done, as he has provided evidence that he suffers from degenerative back and disc problems, and that he was treated for pain as early as 2004. See ECF Nos. 19 at 17- 20; 44 at 39-40. He has also stated that he suffered pain when he did not see the doctor on August 12th, and he described this pain as debilitating. See ECF No. 44 at 14. Defendant has not offered any evidence in rebuttal. Plaintiff has accordingly established the existence of chronic and substantial pain, indicating a serious need for treatment.

### B. Deliberate Indifference

In order to show that defendant's response was deliberately indifferent, plaintiff must demonstrate both a purposeful act or failure to respond to his pain or possible medical need, and harm caused by the indifference. This plaintiff has not done. His evidence shows that he wanted to see the doctor for treatment on August 12th, that he did not get to see the doctor on that day, that defendant returned plaintiff to his cell after plaintiff declined to wait in the holding cage selected by defendant, and that he saw a doctor on September 16, 2010, roughly a month after the incident at issue. The undersigned will assume for purposes of analysis that Defendant Strohmaier was aware on August 12 of the severity of plaintiff's pain.

However, plaintiff does not explain why Defendant Strohmaier was responsible for the

1  missed appointment, or – more importantly – for the one-month wait until plaintiff's September
2  16, 2010 appointment.  See OSU Student Alliance v. Ray, 699 F.3d 1053, 1072, n.12 (9th Cir.
3  2012) ("To state a § 1983 claim against a government defendant, the plaintiff must allege that the
4  defendant acted with sufficient culpability to breach a duty imposed by the relevant provision of
5  federal law."); McGuckin, 974 F.2d at 1062 (individual doctors not responsible for delay when
6  prison referral committee and prison administration responsible for scheduling surgical treatments
7  and "charged with ensuring that [plaintiff's] surgery occurred promptly."); Leer, 844 F.2d at 633-
8  34.  Plaintiff's conclusory allegations that "defendant refused to allow plaintiff to see the doctor"
9  (SAC at 12; ECF No. 44 at 5) are unsupported by the record, and insufficient to meet plaintiff's
10 burden on summary judgment.  See Carmen, 237 F.3d at 1028.  Nothing in the complaint or in
11 plaintiff's evidentiary showing suggests that Strohmaier had any authority over the scheduling of
12 medical appointments.

13       In addition, plaintiff has not raised a triable issue of fact regarding harm from the delay.
14 Plaintiff alleges in very general terms that his back "has never been this messed up," ECF No. 19
15 at 10-11, but does not provide any facts linking the state of his back at the time the complaint was
16 filed to the events of August 12, 2010 – let alone to Defendant Strohmaier.  While the
17 undersigned fully credits plaintiff's allegations of debilitating pain between August 12, 2010 and
18 September 16, 2010, plaintiff has presented no reason to believe that his pain during this period
19 was different from the chronic pain he has suffered before and since, or that his underlying
20 condition was aggravated by the delay at issue.  Cf. Jett, 439 F.3d at 1097 (inmate presented
21 sufficient information to present a genuine issue of material fact where inmate had fractured his
22 thumb yet did not see a hand specialist, as recommended by other treating doctors, for more than
23 nineteen months after the initial injury, in which time the fracture had healed badly, resulting in
24 continuing diminished use of the hand); Shapley, 766 F.2d at 407 (mere delay in surgery, without
25 more, is insufficient to state a claim of deliberate medical indifference, where plaintiff alleged a
26 five-year delay in knee surgery, causing permanent damage to his knee).  Quite to the contrary,
27 the September 16, 2010 doctor's note attributed plaintiff's "flare up" to the mattress he had been
28 sleeping on, not to the unavailability of any particular treatment the previous month.  ECF No. 44

at 39.  In fact, this is fully consistent with plaintiff's own allegations in the second amended complaint where he attributes his back problem to his mattress.  ECF No. 19 at 5.  Accordingly, the asserted injury is too attenuated from the defendant's conduct to support relief. Because plaintiff has failed to establish that the defendant was responsible for the delay in plaintiff's treatment, and that plaintiff suffered further harm as a result of the one-month delay, defendant is entitled to summary judgment.

Because defendant is entitled to summary judgment for the reasons explained above, the court need not reach the question of qualified immunity.

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 63) be granted and this case be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 19, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE